United States District Court
Middle District of Florida
Ocala Civil Division

Case No.:

Alan D. Provost, as personal representative
of the Estate of Alan D. Provost, Jr., deceased,

            Plaintiff,

vs.

Galliano Marine Services, LLC
Offshore Service Vessels, LLC, and
United States of America.


            Defendants,
_____/

### SEAMAN'S COMPLANT FOR WRONGFUL DEATH

Alan D. Provost, as the personal representative of the Estate of Alan D. Provost, Jr., sues defendants Galliano Marine Services, LLC, United States of America, and Offshore Service Vessels, LLC for damages and alleges as follows:

### FACTS COMMON TO ALL COUNTS

1.      Plaintiff, Alan D. Provost has been duly appointed by the Circuit Court in Marion County, Florida to be the personal representative of the Estate of Alan D. Provost, Jr., deceased. The Plaintiff brings this action on behalf of all beneficiaries of the Estate of Alan D. Provost, Jr. and on behalf of the Estate itself.  The beneficiaries include Alan D. Provost and Dawn Michelle Provost.

2.      The decedent Alan D. Provost, Jr. is the son of Alan D. Provost and Dawn Michelle Provost. The decedent resided in Ocklawaha, Florida (Marion County) at the time of his death.

1

3.      The decedent Alan D. Provost, Jr. was employed as a seaman and member of the crew of the vessel CAROLYN CHOUEST when he became ill and died aboard the vessel.  Alan D. Provost, Jr.'s job on the vessel was third mate (a seaman).

4.      The decedent Alan D. Provost, Jr. was employed as a seaman by Defendant, Galliano Marine Services, LLC (hereafter "Galliano").  Galliano is believed to be a Louisiana Corporation whose main office is in Cutoff, Louisiana.  Galliano is doing business within the Middle District of Florida by crewing Edison Chouest vessels that are operating, working and navigating on or within the navigable waters of the State of Florida.  Galliano is thus subject to Florida's longarm statute found at F.S. 48.19.  Galliano is doing continuous and systematic business within Florida by operating and crewing seagoing vessels and is therefore subject to personal jurisdiction in the State of Florida.

5.      The Defendant, Offshore Service Vessels, LLC (hereafter "Offshore") was the owner of the vessel CAROLYN CHOUEST (USCG Official Number 1020547).  The CAROLYN CHOUEST is a commercial merchant vessel that is 222.8 feet long.  The CAROLYN CHOUEST was crewed by seaman who were employees of Defendant Galliano at all material times.  Offshore Service Vessels, LLC is doing business within the Middle District of Florida by permitting its vessels to operate, work, and navigate on or within the navigable waters of the State of Florida. Offshore Service Vessels, LLC is thus subject to Florida's longarm statute found at F.S. 48.19. Offshore Service Vessels, LLC is doing continuous and systematic business within Florida by operating and crewing seagoing vessels and is therefore subject to personal jurisdiction in the State of Florida.

6.      Defendant, United States of America (hereafter "USA") was the charterer of the CAROLYN CHOUEST during the voyage on which Alan D. Provost, Jr. became ill and died.  The

nature and exact type of charter has yet to be described because attorneys for Galliano and Offshore have declined to produce the charter party citing "confidentiality". Based on limited information received by Plaintiff in a F.O.I.A. request, it is alleged that the U.S. Navy and/or the U. S. Military Sealift Command was a charterer of the CAROLYN CHOUEST during the relevant voyage on which Alan D. Provost, Jr. became ill and died.

7.   The CAROLYN CHOUEST was being operated on the voyage in question which commenced on the island of Guam. The voyage took the ship into the Pacific Ocean with not only CAROLYN CHOUEST's merchant marine crew (which included the decedent Alan D. Provost, Jr.) but also a compliment of the U.S. Navy personnel who were on a confidential mission for the government of the United States and United States Navy. The decedent was serving as part of the ship's crew on the voyage in question on the CAROLYN CHOUEST.

8.   Before the voyage began Alan D. Provost, Jr. took a USCG physical which declared him to be "fit for sea duty" on merchant vessels such as the CAROLYN CHOUEST. Alan D. Provost, Jr. was also a commissioned U.S. Naval Reserve Officer. Alan D. Provost, Jr. had to undergo physical exams in order to be commissioned as a U.S. Naval officer. He passed such physical exams and was commissioned as a U.S. Naval Reserve Officer upon graduation from Massachusetts Maritime Academy in 2018. Alan D. Provost, Jr. served in the U.S. Naval Reserve until his untimely death

9.   Alan D. Provost, Jr. was a graduate of the Massachusetts Maritime Academy. As a result of his training and education at Massachusetts Maritime Academy he received a United States Coast Guard Third Mate's License (Unlimited Tonnage on any waters) and was qualified to serve as the third mate or third officer on the CAROLYN CHOUEST on the voyage in question.

10.     As part of the qualifications to serve as a U.S. Coast Guard licensed officer, Alan D. Provost, Jr. had to pass physical exams.  The decedent underwent such exams and was always found to be qualified physically and "fit for sea duty".

11.     Alan D. Provost, Jr. had worked for Defendant Galliano and Offshore in the past aboard the CAROLYN CHOUEST and other merchant vessels of the Edison Chouest group of companies.  He was always found physically qualified and "fit for sea duty".

12.     Alan D. Provost, Jr. was not diagnosed with having diabetes at any time before the voyage in question aboard the CAROLYN CHOUEST which took place in August and September 2020.  He was not required to take any medication at the time of his death.

13.     Before the voyage commenced Alan D. Provost, Jr. was required to travel from his home in Florida and quarantine in Guam before joining the CAROLYN CHOUEST for his job as third mate.  It is believed the decedent quarantined or fourteen days due to COVID 19 protocols.

14.     The confidential voyage the U.S. Navy and/or U.S. Military Sealift Command (a branch or division of the U.S. Navy) which required the service of the merchant vessel CAROLYN CHOUEST commenced on August 10, 2020, from the island of Guam.  Alan D. Provost, Jr. was aboard the vessel and serving as the third mate and was standing a bridge watch from the hours of 0000 to 1200 (midnight to noon) each day.

15.     When Alan D. Provost, Jr. was working as third mate on the CAROLYN CHOUEST after it departed from Guam on August 10, 2020, he began to rapidly lose weight and was having trouble keeping down food and fluids.

16.     On September 6, 2020, while serving as a seaman and member of crew of the CAROLYN CHOUEST Alan D. Provost, Jr. began to feel ill.  He was complaining of nausea, constipation, dehydration, and back pain to fellow crew members.

4

17.     On September 7, 2020, crew members, including the captain of the CAROLYN CHOUEST, Stephen Melnick, noticed that Alan D. Provost, Jr. had lost weight and was seen in the ship's gally with his face flushed and red.  The captain, upon seeing the decedent in that condition, including the decedent holding his head in his hands was overheard stating that "I just want to slap him."  On that date crew members noted that Alan D. Provost, Jr. was also showing signs of being weak and extremely tired.  In fact, the Chief Mate, Otis Lovett, Jr. (First Mate – second in command of the ship who is directly under the captain) relieved the decedent from his bridge watch because of the decedent being too ill to complete his watch.

18.     On September 8, 2020, the decedent was seen by crewmembers including the captain, to be unusually tired and thinner in appearance.  The Chief Mate Lovett informed Captain Melnick of Alan D. Provost, Jr.'s condition and that he was too ill to complete his watch.  At this point Alan D. Provost, Jr.'s condition was reported by crew members to be "sick and slow moving," "having very pale skin," suffering from noticeable weight loss, weakness including stumbling, and lack of verbal responsiveness.  One of the crew members on this date asked Captain Melnick about giving Alan D. Provost, Jr. an "IV" (intravenous fluids).  On this date Chief Mate Lovett and Captain Melnick discussed advising the office of Edison Chouest about Alan D. Provost, Jr.'s illness but Captain Melnick said not to because he did not want the U.S. Navy to know the ship did not have access to its own VSAT communication system (satellite communication). This is so because the ship's VSAT communication was not operational.  This ship did have access to email and the captain said he would send an Inmarsat message to Guam. At 0800 that day the Chief Mate Lovett advised the captain of Alan D. Provost, Jr.'s further deteriorating condition and the captain ordered his temperature and blood pressure to be taken (results: temperature 98.1, blood pressure: 144/40).  It was also noted that day that Alan D. Provost,

Jr. attention to detail including his dexterity (including penmanship) had suddenly and inexplicably deteriorated.   For example, this was the first time Provost had forgotten to complete the communications equipment logs.

19.     On September 9, 2020, the captain went to Alan D. Provost, Jr.'s cabin and noted that he was moving less, had back pain and that he just wanted water.  The captain implemented a two-hour monitoring schedule of Alan D. Provost, Jr.   The chief mate noted that Alan D. Provost, Jr. on that day was extremely tired, had back pain and was dehydrated.  It was reported to the chief mate that Alan D. Provost, Jr. was having a hard time breathing and that he was too weak to eat and drink himself.  Captain Melnick was asked by a crew member if they could give him oxygen (O2) and an I.V.  Captain Melnick told the crewmember to wait.  The second mate suggested to Captain Melnick that he bring the ship closer to shore.  Captain Melnick refused to bring the vessel closer to shore.  Someone advised the U.S. Navy personnel on board on the evening of September 9, 2020, of Alan D. Provost, Jr.'s illness and condition, but the ship's personnel advised the U.S. Navy to wait to contact medical personnel ashore until the next morning based on the orders of Captain Melnick.   A crew member again suggested to Captain Melnick that he contact Edison Chouest ashore for medical advice, and the captain replied it was "not his call".  Alan D. Provost, Jr. on this day was worse, not able to eat and drink and had trouble breathing.  Despite all of these obvious signs of grave illness, Captain Melnick and chief officer/chief mate Lovett did not contact the proper shore personnel to get Alan D. Provost, Jr. the prompt and proper medical care and treatment he was in need of on an emergent basis.

20.     The "mission" that the ship was on for the U.S. Navy was completed on Wednesday, September 9, 2020.  It is believed the CAROLYN CHOUEST was nearest to the

island of Palau and/or the island of Papua New Guinea when the "mission" of the U.S. Navy was completed.

21.     The next day, September 10, 2020, Alan D. Provost, Jr. was seen to have not eaten food that was brought to him.  He was viewed by the ship's crew to be lying on his belly on a mattress placed on the deck between two bunks.  It was readily apparent and noticeable to the ship's crew that he had lost a lot of weight.  In addition to the visible signs of a very bad illness, Alan D. Provost, Jr.'s vital signs were reported to the captain as being very bad.  Many of the ship's crew were voicing the opinion that he needed to be airlifted off the ship.  The second mate was informed that if his condition worsened the ship was to head back to Guam.  However, Alan D. Provost's condition had already deteriorated so much that emergent medical attention should have been already initiated.  On this date Alan D. Provost, Jr. was incoherent and he could barely take water from a syringe.  At 1330 hours he was moved to a hospital room on the ship.  At 1500 hours an I.V. and O2 via nasal cannula were started.  In addition, at 1600 hours a call was made from the ship's hospital to any ship's personnel for oxygen, extension cords and an AED (automatic external defibrillator).  At 1600 hours the chief engineer Edwin Guimdaolibot went to see Alan D. Provost, Jr.  Chief Guimdaolibot observed that he was in the room with two U.S. Navy sailors and another crew member.  The ship had only one cannister of oxygen on board for medical use and it ran out at 1800 hours.  It was discovered that the AEDs had been taken off the ship because they had to be renewed.  The AEDs that were supposed to be on the ship CAROLYN CHOUEST were never found on board the CAROLYN CHOUEST because they had not been replaced.   At this point U.S. Navy personnel took action and contacted U.S. Army doctors who were in Guam to try and diagnose and treat Alan D. Provost, Jr.  The crew was trying to give Alan D. Provost, Jr. an I.V. but were unable to find a suitable vein for insertion of an IV needle.  The

U.S. Army doctors were trying to get the ship's crew to locate a stethoscope, a blood pressure cuff and oxygen, to assist in treating Alan D. Provost, Jr.  Crew members were trying to locate a battery for a thermometer that was not working because of a lack of batteries.  As the crew was unable to get an I.V. going, the doctors on "video chat" advised to try and give him fluid through the rectum, which was attempted.  Since there was no oxygen left (the one bottle had run out of O2), the crew took turns utilizing a bag valve mask (VM) since the one oxygen bottle was empty and the other had a defective regulator and was unusable.  At around 2230 hours on September 10, 2020, Alan D. Provost, Jr. face became completely slack, he turned white, and his eyes opened wide.  The doctor on video chat advised the crew to "hit his chest" and his breath did come back somewhat.  Cardiopulmonary resuscitation was begun on Alan D. Provost, Jr. at that time, but to no avail.  At 2243 hours on September 10, 2020, Alan D. Provost, Jr. was pronounced dead by the doctor on video chat.

22.     During the time that Alan D. Provost, Jr. was getting sicker and sicker, leading up to his untimely death, the captain of the ship, Stephen Melnick, failed to take an active role in overseeing medical care of his crew member Alan D. Provost, Jr.  Captain Melnick erroneously and negligently gave the "mission" on which the CAROLYN CHOUEST was engaged in a higher priority than attending to a gravely ill seaman and member of his crew.  Captain Melnick's misplaced priority caused the untimely death of Alan D. Provost, Jr.

23.     The physicians who were on video chat were U.S. Army doctors from Tripler Army Medical Hospital.  The U.S. Army doctors stated that the ship had only limited diagnostic tools and a lack of trained medical personnel on board the CAROLYN CHOUEST which was making it very difficult if not impossible to treat the decedent for their differential diagnosis of diabetic ketoacidosis ("DKA").  DKA occurs when the body does not have enough insulin to allow blood

sugar into your cells for use as energy.  This slow evolving condition is easily treatable with fluid and electrolytes replacement and receipt of insulin.  Left untreated, DKA is life-threatening.

24.     In addition, the ship's crew recognized that the instructions for treatment given to them during the video conference chats was well beyond the competency of the personnel and medical equipment and supplies available on the CAROLYN CHOUEST.  The ship had no means of testing for high blood sugar or ketones, both of which are indictors for DKA (such as a urinalysis dipstick, glucose meter, ketone test strips for urinalysis).  The ship did not carry a supply of insulin.  The ship also had very minimal medical supplies (lack of working thermometers and lack of oxygen) which was inadequate for a voyage of this nature in the Pacific Ocean.  The ship had removed and not replaced the AED's that were previously on board the ship.  The ship did not have a proper medical kit for a voyage of this nature and duration.  The ship's officers, including Captain Melnik, delayed in contacting the shoreside doctors until the decedent's condition reached the point of no return and he could not be saved because of their inaction.  The ship failed to have a Medical Emergency Plan that included a response to the foreseeable medical conditions to be encountered while at sea, to include DKA.

25.     An autopsy confirmed DKA as Alan D. Provost's cause of death.

26.     Captain Melnik, Chief Mate Lovett and other CAROLYN CHOUEST crew members knew of the decedent's symptoms of nausea, excessive thirst and frequent urination on September 7, 2021.  A reasonably competent captain and/or ship's medical officer knows, or should know with the help of all the available shoreside assistance that is available to mariners, that these findings are signs and symptoms associated with DKA.  The responsible ship's crew members failed to initiate the required reasonable actions to obtain the reasonably available care and treatment to prevent seaman Provost's death. The reasonable actions included, but are not

limited to, seeking shoreside medical assistance and advice via all ship-to-shore means available for sick/ill mariners, heading for the nearest port, seeking an air rescue, calling for and receiving an air drop of insulin and other appropriate medical supplies, and/or requesting medical supplies and assistance from nearby vessel or submarines.

27.     If appropriate and timely action was taken by the captain and crew of the CAROLYN CHOUEST, seaman Provost's life would have been saved as his condition (DKA) is one that is readily treatable and reversable. Captain Melnick made the unreasonable decision to complete the mission and not seek timely emergency and lifesaving medical aid and treatment for seaman Provost.  The decisions of the captain and responsible crew not to timely seek medical help when they knew, or should have known, that seaman Provost was seriously ill caused the death of seaman Provost.

## COUNT I
## CLAIM FOR WRONGFUL DEATH AGAINST DEFENDANT
## UNITED STATES OF AMERICA

Plaintiff, Alan D. Provost, Jr. as personal representative of the Estate of Alan D. Provost, Jr., deceased repeats and re-alleges paragraphs 1-27 above and further alleges:

28.     At all material times herein, Alan D. Provost, Jr. was a seaman employed by defendant United States of America in the capacity of a third mate aboard the CAROLYN CHOUEST.

29.     At all material times the Defendant United States of America was the de-facto bareboat charterer, demise charterer, charterer Pro Hac Vice or other type of maritime charter so that the United States had complete control of the vessel and crew doing the voyage in question during which Alan D. Provost, Jr. got sick and died.

30.     The claim against the United States is brought under the Suits in Admiralty act found at 46 U.S.C.§ 30903.  The Suits in Admiralty Act serves as a waiver of sovereign immunity and authorizes suits against the government in admiralty cases where such claims could be brought against a private party.  Jurisdiction is based on admiralty jurisdiction found at 28 U.S.C. § 1333.

31.     Plaintiff brings this claim pursuant to 46 U.S.C. § 30104 commonly known as the Jones Act, and pursuant to the doctrines of unseaworthiness under the general maritime law of the United States.  This claim is also brought under the Death on the High Seas Act found at 46 U.S.C. § 30301 through 30308 as the death of seaman Provost occurred on the high seas in the Pacific Ocean.  Pre-death pain and suffering is also claimed for Provost's pre-death pain and suffering when on the CAROLYN CHOUEST.

32.     On September 10, 2020, Alan D. Provost, Jr. died after he became ill aboard the CAROLYN CHOUEST and was not given prompt or proper medical treatment and care that is due to seaman from their employers.

33.     The Defendant United States, as the decedent's employer, had the duty to provide the decedent with and maintain a safe place to work, reasonably safe equipment, competent and experienced masters, officers and crew to perform their jobs, and utilize adequate safety measures, training and supervision.  The employer also had the non-delegable duty to provide reasonable, prompt, adequate and complete medical care and assistance for all injuries and illnesses arising out of the service to the vessel.  This duty included the duty to deviate the course and speed of the vessel to permit the seaman to receive prompt, proper and life-saving medical care.  It also included the duty to call out to other ships in the area for life-saving medical supplies and assistance if needed.  Further, the duty included the duty to call for an air drop of life-saving medical supplies

from the nearby medical authorities or an air rescue from the nearest coast guard to save the life of seaman Provost.

34.     The United States is vicariously liable for any negligence of the physicians, shoreside or otherwise it chooses to treat the decedent.

35.     The United States also had the non-delegable duty to provide the decedent with a seaworthy vessel, properly trained crew, appurtenances, gear, medical gear and equipment, medical supplies, medical test kits and a safe method of vessel operation.  This duty includes the duty to provide proper medical supplies for testing for diabetes and insulin levels, including a glucometer, urine test strips or urine dipsticks and insulin.  The ship to be seaworthy must be reasonably fit for its intended purpose.

36.     Plaintiff was injured and died due to the negligence of the Defendant United States and the unseaworthiness of the CAROLYN CHOUEST.

37.     Defendant United States, through its agents, employees, officers and servants was negligent due to the following acts of omission or commission:

    a.   Failure to supervise, instruct and train vessel personnel in the proper way to contact shoreside medical help when a seaman becomes ill at sea;

    b.   Failing to have the proper medical equipment, supplies and gear on the vessel for emergency treatment of seaman at sea;

    c.   Failing to have someone on board from the ship's crew that was trained as a medical officer;

    d.   Failing to a have a licensed medically trained person on board for the mission of the type the vessel was engaged;

    e.   Failing to have a working VSAT system on board;

f.   Failing to timely contact shoreside medical personnel when seaman Provost became ill and was unable to stand his watch;

g.   Failing to have very basic diabetes monitoring and treatment medical supplies on board the vessel;

h.   Failing to re-supply the vessel with the necessary and proper medical supplies and gear for the voyage in question including a glucometer, urine test strips, insulin, bottled medical oxygen, and a defibrillator,

i.   Failing to timely turn the ship around to Guam or the nearest port that would have enabled seaman Provost to be airlifted and receive the necessary medical care for his medical emergency;

j.   Failing to timely call for help from other vessels (including U.S. Navy ships or submarines) in the area which may have had the necessary medical equipment, gear or insulin to diagnose and treat seaman Provost;

k.   Failing to timely call for an medical airlift of seaman Provost so he could get the emergent lifesaving medical care he needed;

l.   Failing to timely call for an emergency airdrop of the necessary and proper medical supplies so that he could be properly diagnosed and treated if the vessel was out of range for an emergency airlift from a helicopter;

m.  Failing to adopt and follow the company safety management system ("SMS") procedures that were put into place for "at sea" medical emergencies which arise during the course of voyages at sea;

n.   Failing to have a SMS procedure established which would have advised the ship's crew on how to handle such a medical emergency as presented by seaman Provost;

o. Failing to contact the shoreside emergency contact person when seaman Provost became ill and unable to stand his watch

p. Failing to comply with applicable Coast Guard, OSHA safety regulations and proper standards of marine practices with regard to medical emergencies of this nature.

q. In other particulars to be obtained during discovery and presented at trial.

38. The Defendant United States knew, or with the use of reasonable care should have known, of the inadequately trained crew and the lack of medical supplies and gear because there was no inspection conducted on board the vessel before the voyage commenced from Guam.

39. As a result of the negligence of the Defendant United States and the unseaworthiness of the CAROLYN CHOUEST, seaman Provost developed diabetic ketoacidosis which, because he did not receive the proper or timely medical treatment, suffered greatly and then died an untimely death at sea.

40. As a direct and proximate cause and result of the negligence of the United States and the unseaworthiness of the CAROLYN CHOUEST, seaman Provost became ill while at sea and was caused to have great pain and suffering before his untimely death. His estate makes a claim for such pre-death conscious pain and suffering.

41. In addition to his pre- death pain and suffering, the Estate of Alan D Provost Jr., makes a claim for the beneficiaries of the estate (namely Alan D. Provost, Sr. and Dawn Michelle Provost) following damages:

a. Loss of support and contribution;

b. Funeral expenses;

    c.  Loss of services;

    d.  Loss of inheritance

WHEREFORE, Plaintiff, the Estate of Alan D. Provost, Jr., deceased , demands judgement for damages against Defendant United States of America, jointly and severally for compensatory damages in excess of Five Million Dollars, prejudgment interest, post-judgement interest and costs.  Plaintiff demands a trial by jury.


## COUNT II
## CLAIM FOR WRONGFUL DEATH AGAINST DEFENDANT, OFFSHORE SERVICE VESSELS, LLC

Plaintiff, Alan D. Provost, as personal representative of the Estate of Alan D. Provost, Jr., deceased repeats and re-alleges paragraphs 1-27 above and further alleges:

42.     At all material times herein, Alan D. Provost, Jr. was a seaman employed, by defendant Offshore Service Vessels, LLC, in the capacity of a third mate aboard the CAROLYN CHOUEST.

43.     At all material times the Defendant Offshore Service Vessels, LLC was the owner of the CAROLYN CHOUEST and employer of the crew doing the voyage in question during which Alan D. Provost, Jr. got sick and died.

44.      Plaintiff brings this claim pursuant to 46 U.S.C. § 30104 commonly known as the Jones Act, and pursuant to the doctrines of unseaworthiness under the general maritime law of the United States.  This claim is also brought under the Death on the High Seas Act found at 46 U.S.C. § 30301 through 30308 as the death of seaman Provost occurred on the high seas in the Pacific Ocean.  Pre-death pain and suffering is also claimed for Provost's pre-death pain and suffering when on the CAROLYN CHOUEST.

45.     On September 10, 2020, Alan D. Provost, Jr. died after he became ill aboard the CAROLYN CHOUEST and was not given prompt or proper medical treatment and care that is due to seaman from their employers.

46.     The Defendant Offshore Service Vessels, LLC, as the decedent's employer, had the duty to provide the decedent with and maintain a safe place to work, reasonably safe equipment, competent and experienced masters, officers and crew to perform their jobs, and utilize adequate safety measures, training and supervision.  The employer also had the non-delegable duty to provide reasonable, prompt, adequate and complete medical care and assistance for all injuries and illnesses arising out of the service to the vessel.  This duty included the duty to deviate the course and speed of the vessel to permit the seaman to receive prompt, proper and life-saving medical care.  It also included the duty to call out to other ships in the area for life-saving medical supplies and assistance if needed.  Further, the duty included the duty to call for an air drop of life-saving medical supplies from the nearby medical authorities or an air rescue from the nearest coast guard to save the life of seaman Provost.

47.     Offshore Service Vessels, LLC is vicariously liable for any negligence of the physicians, shoreside or otherwise it chooses to treat the decedent.

48.     Offshore Service Vessels, LLC also had the non-delegable duty to provide the decedent with a seaworthy vessel, properly trained crew, appurtenances, gear, medical gear and equipment, medical supplies, medical test kits and a safe method of vessel operation.  This duty includes the duty to provide proper medical supplies for testing diabetes and insulin levels, including a glucometer, urine test strips or urine dipsticks and insulin.  The ship to be seaworthy must be reasonably fit for its intended purpose.

49.    Plaintiff was injured and died due to the negligence of the Defendant Offshore Service Vessels, LLC and the unseaworthiness of the CAROLYN CHOUEST.

50.    Defendant Offshore Service Vessels, LLC, through its agents, employees, officers and servants was negligent due to the following acts of omission or commission:

a.   Failure to supervise, instruct and train vessel personnel in the proper way to contact shoreside medical help when a seaman becomes ill at sea;

b.   Failing to have the proper medical equipment, supplies and gear on the vessel for emergency treatment of seaman at sea;

c.   Failing to have someone on board from the ship's crew that was trained as a medical officer;

d.   Failing to a have a licensed medically trained person on board for the mission of the type the vessel was engaged;

e.   Failing to have a working VSAT system on board;

f.   Failing to timely contact shoreside medical personnel when seaman Provost became ill and was unable to stand his watch;

g.   Failing to have very basic diabetes monitoring and treatment medical supplies on board the vessel;

h.   Failing to re-supply the vessel with the necessary and proper medical supplies and gear for the voyage in question including a glucometer, urine test strips, insulin, bottled medical oxygen, a defibrillator,

i.   Failing to timely turn the ship around to Guam or the nearest port that would have enabled seaman Provost to be airlifted and receive the necessary medical care for his medical emergency;

j.  Failing to timely call for help from other vessels (including U.S. Navy ships or submarines) in the area which may have had the necessary medical equipment, gear or insulin to diagnose and treat seaman Provost;

k.  Failing to timely call for an medical airlift of seaman Provost so he could get the emergent lifesaving medical care he needed;

l.  Failing to timely call for an emergency airdrop of the necessary and proper medical supplies so that he could be properly diagnosed and treated if the vessel was out of range for an emergency airlift from a helicopter;

m.  Failing to follow the company SMS procedures that were put into place for "at sea" medical emergencies which arise during the course of voyages at sea;

n.  Failing to have a SMS procedure established which would have advised the ship's crew on how to handle such a medical emergency;

o.  Failing to contact the shoreside emergency contact person when seaman Provost became ill and unable to stand his watch

p.  Failing to comply with applicable Coast Guard, OSHA safety regulations and proper standards of marine practices with regard to medical emergencies of this nature.

q.  In other particulars to be obtained during discovery and presented at trial.

51.  The Defendant Offshore Service Vessels, LLC knew, or with the use of reasonable care should have known of the inadequately trained crew and the lack of medical supplies and gear because there was no inspection conducted on board the vessel before the voyage commenced from Guam.

52.    As a result of the negligence of the Defendant Offshore Service Vessels, LLC and the unseaworthiness of the CAROLYN CHOUEST, seaman Provost developed diabetic ketoacidosis which, because he did not receive the proper or timely medical treatment, suffered greatly and then died an untimely death at sea.

53.    As a direct and proximate cause and result of the negligence of the Defendant Offshore Service Vessels, LLC and the unseaworthiness of the CAROLYN CHOUEST, seaman Provost became ill while at sea and was caused to have great pain and suffering before his untimely death.  His estate makes a claim for such pre-death conscious pain and suffering.

54.    In addition to his pre- death pain and suffering, the Estate of Alan D Provost Jr., makes a claim for the beneficiaries of the estate (namely Alan D. Provost, Sr. and Dawn Michelle Provost) following damages:

a.   Loss of support and contribution;

b.   Funeral expenses;

c.   Loss of services;

d.   Loss of inheritance

WHEREFORE Plaintiff, Alan D. Provost, as personal representative of the Estate of Alan D. Provost, Jr., deceased, demands judgment for damages against Defendant Offshore Service Vessels, LLC, jointly and severally with other defendants, for compensatory damages in the amount of Five Million Dollars ($5,000,000.00), prejudgment interest, post-judgment interest, costs.  Plaintiff demands a trial by jury.

**COUNT III**
**CLAIM FOR WRONGFUL DEATH AGAINST DEFENDANT, GALLIANO MARINE SERVICES, LLC**

Plaintiff, Alan D. Provost, as personal representative of the Estate of Alan D. Provost, Jr., deceased repeats and re-alleges paragraphs 1-27 above and further alleges:

55.   At all material times herein, Alan D. Provost, Jr. was a seaman employed, by defendant Galliano Marine Services, LLC, in the capacity of a third mate aboard the CAROLYN CHOUEST.

56.   At all material times the Defendant Galliano Marine Service, LLC was the owner of the CAROLYN CHOUEST and employer of the crew doing the voyage in question during which Alan D. Provost, Jr. got sick and died.

57.   Plaintiff brings this claim pursuant to 46 U.S.C. § 30104 commonly known as the Jones Act, and pursuant to the doctrines of unseaworthiness under the general maritime law of the United States.  This claim is also brought under the Death on the High Seas Act found at 46 U.S.C. § 30301 through 30308 as the death of seaman Provost occurred on the high seas in the Pacific Ocean.  Pre-death pain and suffering is also claimed for Provost's pre-death pain and suffering when on the CAROLYN CHOUEST.

58.   On September 10, 2020, Alan D. Provost, Jr. died after he became ill aboard the CAROLYN CHOUEST and was not given prompt or proper medical treatment and care that is due to seaman from their employers.

59.   The Defendant Galliano Marine Service, LLC, as the decedent's employer, had the duty to provide the decedent with and maintain a safe place to work, reasonably safe equipment, competent and experienced masters, officers and crew to perform their jobs, adequate safety measures, training and supervision.  The employer also had the non-delegable duty to provide reasonable, prompt, and utilize adequate and complete medical care and assistance for all injuries and illnesses arising out of the service to the

vessel.  This duty included the duty to deviate the course and speed of the vessel to permit the seaman to receive prompt, proper and life-saving medical care.  It also included the duty to call out to other ships in the area for life-saving medical supplies and assistance if needed.  Further, the duty included the duty to call for an air drop of life-saving medical supplies from the nearby medical authorities or an air rescue from the nearest coast guard to save the life of seaman Provost.

60.    Galliano Marine Service, LLC is vicariously liable for any negligence of the physicians, shoreside or otherwise it chooses to treat the decedent.

61.    Galliano Marine Service, LLC also had the non-delegable duty to provide the decedent with a seaworthy vessel, properly trained crew, appurtenances, gear, medical gear and equipment, medical supplies, medical test kits and a safe method of vessel operation. This duty includes the duty to provide proper medical supplies for testing diabetes and insulin levels, including a glucometer, urine test strips or urine dipsticks and insulin. The ship to be seaworthy must be reasonably fit for its intended purpose.

62.    Plaintiff was injured and died due to the negligence of the Defendant Galliano Marine Service, LLC and the unseaworthiness of the CAROLYN CHOUEST.

63.    Defendant Galliano Marine Service, LLC through its agents, employees, officers and servants was negligent due to the following acts of omission or commission:

a.  Failure to supervise, instruct and train vessel personnel in the proper way to contact shoreside medical help when a seaman becomes ill at sea;

b.  Failing to have the proper medical equipment, supplies and gear on the vessel for emergency treatment of seaman at sea;

c.  Failing to have someone on board from the ship's crew that was trained as a medical officer;

d.  Failing to a have a licensed medically trained person on board for the mission of the type the vessel was engaged;

e.  Failing to have a working VSAT system on board;

f.  Failing to timely contact shoreside medical personnel when seaman Provost became ill and was unable to stand his watch;

g.  Failing to have very basic diabetes monitoring and treatment medical supplies on board the vessel;

h.  Failing to re-supply the vessel with the necessary and proper medical supplies and gear for the voyage in question including a glucometer, urine test strips, insulin, bottled medical oxygen, a defibrillator,

i.  Failing to timely turn the ship around to Guam or the nearest port that would have enabled seaman Provost to be airlifted and receive the necessary medical care for his medical emergency;

j.  Failing to timely call for help from other vessels (including U.S. Navy ships or submarines) in the area which may have had the necessary medical equipment, gear or insulin to diagnose and treat seaman Provost;

k.  Failing to timely call for an medical airlift of seaman Provost so he could get the emergent lifesaving medical care he needed;

l.  Failing to timely call for an emergency airdrop of the necessary and proper medical supplies so that he could be properly diagnosed and treated if the vessel was out of range for an emergency airlift from a helicopter;

m. Failing to follow the company SMS procedures that were put into place for "at sea" medical emergencies which arise during the course of voyages at sea;

n. Failing to have a SMS procedure established which would have advised the ship's crew on how to handle such a medical emergency;

o. Failing to contact the shoreside emergency contact person when seaman Provost became ill and unable to stand his watch

p. Failing to comply with applicable Coast Guard, OSHA safety regulations and proper standards of marine practices with regard to medical emergencies of this nature.

q. In other particulars to be obtained during discovery and presented at trial.

64. The Defendant Galliano Marine Service, LLC knew, or with the use of reasonable care should have known of the inadequately trained crew and the lack of medical supplies and gear because there was no inspection conducted on board the vessel before the voyage commenced from Guam.

65. As a result of the negligence of the Defendant Galliano Marine Service, LLC and the unseaworthiness of the CAROLYN CHOUEST, seaman Provost developed diabetic ketoacidosis which, because he did not receive the proper or timely medical treatment, suffered greatly and then died an untimely death at sea.

66. As a direct and proximate cause and result of the negligence of the Defendant Galliano Marine Service, LLC and the unseaworthiness of the CAROLYN CHOUEST, seaman Provost became ill while at sea and was caused to have great pain and suffering before his untimely death.  His estate makes a claim for such pre-death conscious pain and suffering.

67.     In addition to his pre- death pain and suffering, the Estate of Alan D Provost Jr., makes a claim for the beneficiaries of the estate (namely Alan D. Provost, Sr. and Dawn Michelle Provost) following damages:

r.   Loss of support and contribution;

s.   Funeral expenses;

t.   Loss of services;

WHEREFORE Plaintiff, Alan D. Provost, as personal representative of the Estate of Alan D. Provost, Jr., deceased, demands judgment for damages against Defendant, Galliano Marine Service, LLC, jointly and severally with other defendants, for compensatory damages in the amount of Five Million Dollars ($5,000,000.00), prejudgment interest, post-judgment interest, costs.  Plaintiff demands a trial by jury.

/s/ Jacob J. Munch
JACOB J. MUNCH
E-mail: jake@munchandmunch.com
Florida Bar Number 376523
CATHERINE M. SAYLOR
E-mail: casey@munchandmunch.com
Florida Bar Number 115593
MUNCH and MUNCH, P.A.
600 South Magnolia Avenue – Suite 325
Tampa, Florida 33606
Ph: (813) 254-1557
Fax: (813) 254-5172
Attorney for Plaintiff